We'll hear argument first this morning in Case 18-1269, Rodriguez v. the Federal Deposit Insurance Corporation. Mr. Reich? Mr. Chief Justice, and may it please the Court, the question presented in this case is what body of law courts should apply to determine ownership of consolidated tax refunds. In our view, the answer to that question is straightforward. Courts should apply state law. That's the body of law that virtually always governs property rights disputes in our federal system. And here, the political branches have not displaced that traditional area of state power, either by statute or by federal regulation. The FDIC takes a different approach, although exactly what that approach is has changed somewhat over the course of this litigation. In the lower courts, the FDIC advocated a rule of federal common law known as the Bob Richards Rule, which holds that ownership of a tax refund presumptively resides with the subsidiary whose losses gave rise to that refund. That's the rule the FDIC has advocated for decades, and that's the rule the Tenth Circuit has followed. But in this Court, the government has abandoned any defense of the Bob Richards Rule, and as our opening brief explains, that rule fails every test this Court has established for the creation of federal common law and contravenes the tax laws themselves. Instead, the government advocates a brand-new rule, one that it's never pressed in the lower courts, and that, to our knowledge, no court has ever adopted. But this rule suffers from an even more basic flaw than Bob Richards itself. It simply assumes the answer to the very ownership question at issue. The government's argument starts from the premise that where a parent has agreed to pay its subsidiary the amount of a tax refund, the subsidiary has been vested with, quote, ultimate entitlement to the refund itself. That assumption serves as the load-bearing pillar of the government's entire argument, yet it has no basis in State law, the government disclaims any argument it's grounded in Federal law, and it can't even find footing in the Ninth Circuit's 1973 Bob Richards decision. Starting with State law, it's simply not the case that where a parent agrees to pay its subsidiary the amount of a refund, the subsidiary necessarily has any property rights in the refund itself. Rather, there are two possible ways of characterizing that payment obligation which have substantially different legal consequences. Ginsburg. Before you proceed with that argument, you have now said your question presented was about Bob Richards. You say that the government has abandoned that position. The Tenth Circuit, on the other hand, the opinion is shot through with quotes from the contract, and what the Tenth Circuit said, it was examining the party's agreement to determine whether parent or sub gets this. So it seems that the Tenth Circuit, while it might have cited Bob Richards, was relying on contract interpretation. Why should we take up Bob Richards at all in this case? Because both sides agree that that's not what should be dispositive. And the Tenth Circuit said, here we have a contract, calls for contract interpretation, State law, contract interpretation. The question presented, it seems, has now vanished from the case. I think the Bob Richards rule was critical to the Tenth Circuit's decision, and you can tell that both from what the Tenth Circuit said and what the Tenth Circuit did. What the Tenth Circuit said on page 18a of the petition appendix is that Bob Richards, quote, clearly applies to this case and provides the general framework we must apply in resolving the party's dispute. It then went on to say that what the written terms of the contract unambiguously deviates from the Bob Richards rule. So it understood Bob Richards as establishing a clear statement rule, which is the understanding that the lower courts generally have of Bob Richards and that the FDIC itself has advocated for decades. And then when the Court went on to analyze the agreement, it didn't apply the ordinary rules of State agency law to determine whether an agency relationship had been created here. It did what it said it was going to do, which is just look at the bare words of the agreement and see if they unambiguously departed from the Bob Richards rule. Sotomayor, excuse me, may I? Because you're going to have to point to something and some words in the opinion that do that. I read the opinion. You're right. It said Bob Richards sets out the rule. But the first step of Bob Richards is, does the contract tell us who has interim ownership? That's how I read the opinion. Does State law trump a contract allocation of ownership? No. State law sets the inquiry to determine whether the parties have vested equitable title in an entity that does not. No, no, no. Answer my question. If the contract said, you're my agent, as clearly as that, would State law go any further? Would it change that statement? State law would not deem that sufficient to create an agency relationship. Ah, that's what the fight's about, whether State law requires something in addition to that? Well, the overarching fight is as to whether courts should apply the ordinary No, I don't want an overarching fight. I want to know what State – does State law say that State law trumps contract agreement? It doesn't say that it trumps the contract agreement, but it – All right. So it doesn't say that. Does it say we don't look to the contract to see who – to establish if it does so unambiguously? It says you look to the contract to determine whether the parties have consented to enter an agency relationship. But – All right. So that's what State law says. So in which ways did the Tenth Circuit err in looking at the contract to determine whether the parties consented to an agency relationship? The Tenth Circuit erred because under State agency law, under the ordinary rules of State agency law, which the Tenth Circuit didn't cite or even purports to apply, the prerequisites for establishing an agency relationship are to – are that the agent must be vested with both loyalty and control to the principal – by the principal. The principal must have interim control over the agent. That's the defining feature of an agency relationship. And the common law is equally clear that simply labeling someone an agent is not sufficient to establish a common law agency relationship. That is in section 1.02 of the Third Restatement, section 1 of the Second Restatement. Was this argued below? Yes. This was argued in exactly those terms below at every stage of the proceeding. So am I to assume you – are you arguing that somehow because of the Bob Richards rule, the Court was not paying attention to what the contract did or didn't do? Yes. What the Court expressly said the Bob Richards rule required was that the contract must unambiguously deviate from its – Tell me where the words – where in the opinion you see those words. On page 18A of the Petition Appendix, in the – at the end of the paragraph, it says that – after it says Bob Richards outlines the general framework we must apply, it says that, therefore, as directed by Barnes and Bob Richards, we must look to the terms of the agreement and see whether they unambiguously deviate. Well, it does say that. It says taking into account Colorado case law. You happen to leave those words out. Yes. It looked to Colorado case law. That's what it says. Only as to the question of how does one read a contract, but it didn't. Oh, how does one read a contract? Okay. They say here's what we'll do. We'll look at the agreement, taking into account Colorado case law, and decide whether it unambiguously says how tax refunds are to be handled. Then the next few pages they do that. Then at the end they say, you know, it's ambiguous. But there's a rule right written down here that says in the case of ambiguity, you decide it in favor of the bank, the subsidiary. And so we decide it in favor of the bank. And we conclude, since it must be construed in favor of the bank and the FDIC, the agreement must be read as creating only an agency relation between the parent and the bank. Okay. I read that. I thought unless there's some Colorado law that says that that doesn't create an agency, they've said under Colorado law it creates an agency. And there is Colorado law that says that doesn't create an agency. Good. Where is that in the briefs? That's in our briefs. Where? What pages? I better read it. In part two of our brief. And what pages should I read? I believe beginning on page 15 of our reply brief, we discuss the requirements of Colorado law, starting on page 16. And do you say, and in fact, even though they said, taking into account Colorado law, we think this creates an agency relation, even though they said that that was wrong as a matter of Colorado law? Yes. That's precisely what we say. Okay. Now, if they've made a mistake of Colorado law, I guess there is a group that could answer that question. And they're not sitting in front of you. They're sitting in Denver. Yes, Your Honor. But the issue here is not simply that it made a mistake of Colorado law. It's that it didn't even purport to be applying the right body of Colorado law. It said that it needed unambiguous evidence in the written terms of the agreement. It doesn't cite any Colorado cases as to agency. And the word control, which is the clear prerequisite for agency in Colorado, doesn't appear once in its opinion. So its entire mode of analysis was dictated by what it understood to be the federal common law rule, which was a clear statement. Is it enough, then, for us to say, in your view, that the Bob Richards rule is not good law, and then to send it back? I think that... That's all we would say. Bob Richards' federal common law, we don't do that. That's not a good rule. That's all we're going to say about this. Send it back, as Justice Breyer says. And you can look at state law without any thumb on the scale provided by the Bob Richards rule. I think that's essentially correct, Your Honor. The one amendment I'd make to that is I think the Court should clarify that in determining whether an agency or trust relationship exists, courts should apply the ordinary rules of state agency or trust law, not varied in any way because of the fact that a consolidated tax refund is available here. And I think that guidance is quite important, because if one looks at the lower court cases, even that's declined to apply the Bob Richards rule, there appears to be some confusion in the lower courts as to whether they should conduct a different analysis. For example, the Eleventh Circuit's Net Bank decision, although it rejects Bob Richards, it still doesn't purport to apply normal Georgia agency law. It does – it just looked at the plain words of the agreement according to some undefined federal law standard. I guess the other thing we'd have to say as well is that the IRS regs don't speak to this question. Yes, Your Honor. The SG's new argument. And I think the SG's new argument, it all hinges on the – on the notion that when a payment – there's a payment obligation from parent to sub, entitlement to the refund has been vested in the sub. Because what they say repeatedly throughout the brief is that the sole office of the regulations in this context is not to alter the party's underlying ownership rights under State law. They say that on pages 18 to 19, 22, 32, and 38. And – and we agree with that. That's – that's correct, and that has to be right, because there's nothing in the Federal tax regulations, let alone the Internal Revenue Code, that expresses any interest or concern with how ownership rights are allocated within an affiliated group. They're simply silent on that question. And the government makes much of the word agent in the tax regulations, but that doesn't get them where they need to go for at least two reasons. One is that that word has universally been understood by the government itself and by every lower court as just a procedural designation that identifies the parent as the sole member of the group authorized to communicate with the IRS, not as vesting it with the obligations of a common law agent. And in any event, second, even if it did carry some of its common law baggage, all the regulations say is that the parent is agent for the group as a whole, the affiliated group of which the parent itself is a member. So it doesn't tell you who within the group actually gets the refund. You need to look to the party's agreement as interpreted under State law to answer that question. And so that just brings you back to the underlying State law question. Do the parties agree the parent gets the refund and just owes debts to the subsidiaries, or do the parties actually vest equitable title to the refund in the subsidiaries? Sotomayor. Sotomayor. How do we write this? Just as Kavanaugh says, we say no common law, Bob Richard's rule. But if we read this opinion and don't think that they applied the Bob Richard's rule to the interim ownership question, which is what's at issue here, you're just claiming a misapplication of Colorado law. I don't, I will ask the Solicitor General whether they stand by, they seem even under their test to create a common law rule under the two prongs. So I'll ask them whether creating any kind of federal common law is right or not, and they can answer that question. But I don't know how I get to it when they haven't briefed that question. And I don't know how I get to it if I assume that what the circuit did was what I said, which was to look to the contract to see if it created an agency or debtor creditor situation. Do I write an opinion that says when you look to the contract, that's what you do, and you apply just general state agency debtor creditor law? I think that's exactly what the opinion should say, Your Honor. And I just want to make a few points. Sotomayor, we don't need to reach Bob Richard's is what I keep saying. A few points, Your Honor. First, I think the government's failure to defend Bob Richard's can't be a reason not to reach that question. That's literally the question presented in this case. Why? Usually we need adversarial testing before we reach questions that are not implicated by the issues before us. Well, I do think the issue is implicated. I would just take the Tenth Circuit at its word that it said Bob Richard's clearly applies to this case. And for the reasons I mentioned, it understood that as establishing a clear statement rule. And I think the ---- Well, but, Mr. Reich, it didn't ---- it said, you're exactly right, unambiguously, so it says there's a clear statement rule. But then in its contract analysis, it obviously doesn't apply a clear statement, because in ten pages of contract analysis, it says some provisions do this, and then on the other hand, some provisions do that. And then in the end, we're relying on a default provision in the contract itself. So that's nobody's idea of a clear statement. So it doesn't seem as though that's what they were doing when they actually sat down to do the work of the opinion. I do think it was, Justice Kagan, in two ways. One, I think that the fact that they invoked the rule of construction in the contract was their way of determining that the contract did unambiguously address the question as a whole, that they thought the provisions were cut in both ways, but then the contract itself resolved that ambiguity clearly. And moreover, the way that Bob Richards was doing the work was in what question the Court was looking at the contract to answer. It was just looking at what the written terms of the agreement said, not what Colorado law actually requires for the creation of an agency relationship, an analysis that even the government doesn't really defend, because in their brief, they themselves acknowledge that to create an agency relationship under Colorado law, you need control. They think a minimal level of control is sufficient, but which we don't think is correct. But even they think the Court would have needed to do more under an actual normal agency analysis. So I think the mode of analysis was distorted by this notion that only the words of the contract mattered. Breyer, I suppose, just in case we reach the question of Federal common law, a matter which, when I guess I tried to study it, seems to have evaporated, what is why isn't it common sense to say, look, we're talking here about three bank subs and a parent, and they get a tax refund. And the reason they get the tax refund is because of the bank. They're the ones that lost the money. So mail them the money, IRS. And in case there's something odd about it, there is an IRS rule, and the IRS rule says, you know, it says that that parent, it says, is an agent, an agent for each member of the group. And they describe it's the agent's, i.e., the parent's obligation to collect the refund for the group. And that's one of the matters subject to the agency. So that's what the IRS says. So I am a naive judge who forgets his Federal law course. And I look at that, and I say, the IRS wants the money to go back to the bank. The bank's the one responsible for the refund. They're the ones that lost the money. And why shouldn't it go back to the bank, unless the parties want something different? And if they want something different, all they have to do is tell us in the contract. Now, I know there must be a lot of law here that says don't do what seems to make sense, but I'd like to know, in case we reach that issue, what is it? Yes, Your Honor. I think that that intuition is undoubtedly what underlay the Ninth Circuit's decision, and it wasn't much more than its feeling as to fairness that guided it. And I think there are two categories of flaws there. One is just the absence of any positive legal basis for codifying that intuition into law. There's nothing in the statute or the regs that says that it's the subsidiary's however sensible that could seem to a judge. And that, as you said, is Federal Law 101. That means the courts can't create the rule themselves. But the second point is that even as to the sense of what's fair, I think the analysis that the Ninth Circuit conducted was overly simplistic on a number of levels. One is that the entire structure of the consolidated return regulations is to treat the affiliated group essentially as if it were a single entity and to merge its income and losses in ways that make it difficult and often contrary to the regulations to try to separate them out as attributable to one member or another. For example, intercompany transactions, losses that are technically listed as one subsidiary's losses, could really be due to conduct of other members of the group. And more broadly, the regulations don't or are quite clear that payments of tax liability are entirely within this group's discretion to allocate. So allocating refunds to a particular member decouples who pays the tax liability from who gets the refund, which is itself quite unfair. And finally, I think that the notion that Federal Law is necessary to achieve what seems like a fair result is itself flawed in that State law contains all the protections that the Bob Richards rule is purportedly designed to achieve. State law contains numerous doctrines to prevent unjust enrichment. There's constructive trust. There's fiduciary duty. And many States have essentially the Bob Richards rule as rules of their own common law in the FDIC v. FBOP decision that both parties cite. An Illinois court applied Illinois law, which essentially has Bob Richards rule at the State level, and so does Oregon. So I think that there was no unfairness created by the application of that normal body of law, and States or the political branches are the ones entrusted with the authority to make these judgments as to fairness. I do want to go back to this point as to what the Tenth Circuit below said, because I also think it's important to note that the government's principal reason for opposing cert in this case was that purportedly Bob Richards didn't play a role in the decision below. We responded at the cert reply, and the Court granted the case nonetheless. And I think the government's refusal to defend the Bob Richards rule isn't a reason to not reach the question. I think that it's a sophisticated litigant. It certainly shouldn't be encouraged for declining to answer what's clearly the question presented. And in addition, there's many examples in this Court in which a difficult, if not impossible, to defend legal rule comes up to the Court. The Respondent just doesn't defend it. I think Justice Alito's opinion in Travelers Casualty Insurity Co. is a good example of this, actually quite a similar rule to this. And the Court's practice in many of these cases is simply to deem the rule invalid, a rule that is manifestly indefensible, and either not address or reject the government's other grounds for defense. JUSTICE GINSBURG We have had no adversarial confrontation on this issue, and we usually don't decide an abstract question disembodied from the case. It has to be an actual controversy between the parties. And so you present a question, the other side says, that's irrelevant to this case. We have no one on the other side defending the rule. I think the government had every opportunity to defend this rule. That was the question presented. That's the question on which the Court presented. Kagan just to put it another way, though, Mr. Reich, had the government come to us and said, we no longer intend to defend the Bob Richards rule, I think we probably wouldn't have thought twice about just we would have said, well, then we need to appoint an amicus. I think it's a question as to why the government didn't do that in this case if it had no intention of defending the rule on which the Court granted cert. I also think it's notable that the government's brief attempts to cram its new rule into the Bob Richards decision, perhaps in recognition of the fact that that is the question which the Court granted cert, and it needed some basis for grounding its argument in that decision. Of course, for the reasons we give, the rule it's advocating here has only passing resemblance to the actual Bob Richards rule applied by the lower courts or by the Tenth Circuit in this case. And so I don't think that the government's refusal to address the question can be a reason for the Court to allow a rule that is, I think for the reasons we give in our opening brief, just fails every possible test for the creation of Federal common law, something that is permitted only in the narrowest of circumstances. And there's a circuit split. And there is a circuit split. And the government benefits from this rule throughout the country. Absolutely. And this is a rule of no small So their argument suggests, because they're not defending it, maybe they're going to tell me it is defensible, but Well, that'll be a surprise to us. But I think the problem is that this rule is of massive economic significance. This refund is $4 million. There's cases where these tax refunds go into 100, in the Downey case, $170, $370 million, and these issues arise all the time in the bankruptcy courts. And it's often difficult for bankruptcy cases to even reach this Court because they moot out frequently because the bankruptcy proceeding concludes. So I think in this case where the Tenth Circuit said literally this rule clearly applies to this dispute and then set it up, set forth the analysis that applied, this is an opportunity for the Court to at last address a rule that has essentially abrogated State property rights for decades with massive implications for creditors and for parties drafting these agreements, which should know with clarity which law their agreements are going to be interpreted in light of. And if there are no further questions. Thank you, counsel. Mr. Houston.  The question in this case is whether the parties who made this contract intended the bank to be the equitable owner of the tax refund. That question turns on the party's contractual intent. To determine that intent, start with the facts that are undisputed. First, the bank was the taxpayer in this consolidated group who paid the taxes and then generated the losses that earned this refund in the first place. UWBI is just a holding company. It had zero taxable income in the relevant year. It did nothing to earn this refund. Second, the parties here agree that under the express terms of their contract, when the IRS paid the $4 million tax refund at issue in this case, the bank was entitled to receive that amount within 10 business days. So given those two undisputed facts, the refund is headed within 10 days to the bank and the bank is the taxpayer that generated the refund in the first place, ask yourself, why would these parties have intended to make UWBI the equitable owner of the tax refund and left the bank as nothing more than an unsecured creditor, especially when, if the parties had made that type of arrangement, they would very likely have violated the Federal Reserve Act? The answer is they didn't. Every relevant provision of the contract shows that the parties intended to make the bank the owner of the refund and to make UWBI an agent. First, as Justice Sotomayor pointed out, the parties specified that UWBI would act as an agent on behalf of the subsidiaries. That's the language of their contract. Second, they said further that the essence of their agreement, the core logic of the agreement, was that the bank ought to be treated as a separate taxpayer and UWBI should be, quote, merely an intermediary with the IRS. That type of language, agent, mere intermediary, that is exactly what you would expect to find in a contract if what the parties really wanted to get across was that when UWBI collects a tax refund like this one from the IRS, it does not acquire equitable title to it. The parties then went on to specify the duties that UWBI has as an agent. They said that if the bank incurs a loss, it is an agent. Roberts. Mr. Houston, two words you haven't used yet are Bob Richards. What is your position on the extent to which that is implicated in this case, and what is your position on its viability? Your Honor, we think that Bob Richards, as the case describes on its facts and as the rule for determining who ends up with a tax refund where parties have not made a contract. I would urge the Court to look at page 17a of the Tenth Circuit's opinion. This is where the Court describes the Bob Richards rule. It's true, as my friend suggests, that the Tenth Circuit understood that Bob Richards applied to this case. But on the immediately preceding page of the opinion, the Tenth Circuit explained what the Bob Richards rule is. What the Bob Richards rule is is a rule where there is not an explicit agreement. The Court went on to say, absent any differing agreement, it would apply Bob Richards. Sotomayor, I'm sorry, now let's stop. Assume this was that case. Assume this agreement doesn't specify anything. All right? Can the Bob Richards rule stand, and why should it stand? Well, appreciating, submitting respectfully that the Court – that would be a pure advisory opinion in the context of this case, Your Honor, I'm happy to answer the question. I think the answer to the question is that where parties do not have a contract, the right way to determine who owns a tax refund is to look to State law. I think, as my friend suggests, the FBOP case is a – So you are rejecting the Bob Richards rule? I – there is – we certainly think – Assuming – Yes. You're right that it applies only when the parties don't have an agreement, you don't think it's right? I do not think that it is correct as a rule of Federal common law. I think the Court in Bob Richards itself didn't say it was applying a rule of Federal common law. It said it was looking to unjust enrichment. Now, certainly the Bob Richards opinion could have been more clear, and it's undoubtedly true that some courts have subsequently understood Bob Richards as a rule of Federal common law. All right. Let's just stop there, because I think this is what the Chief Justice was trying to get at, and Justice Sotomayor, too. If Bob Richards, as understood by the lower courts, as creating a Federal common law rule to require a clear statement in a contract before a contract will be enforced, contrary to existing State law, do we all agree – can we all agree on one thing? That's wrong. I agree that that rule of – you would not put a thumb on the scale where the parties have a contract. As we have always said. Okay. Is that a yes? All right. That's a lot of work. Is that a yes? It's wrong? It's wrong. We got that. Okay. Did he say yes, though? He said it's wrong? So if that's the case, Counsel, he said it's wrong. I'm not letting him off the hook so fast. No, I'm trying to keep him on. I'm getting wheezy with this back and forth. To be clear, could – is your answer to Justice Gorsuch's question a yes? The answer to the question is that where parties have made a contract, ownership of a tax refund is determined pursuant to the terms of the contract. Pursuant to State law without any thumb on the scale by Federal common law? Yes. Okay. Okay. All right. Now, if that's the case, why shouldn't this Court say so? It seems like it would be of material benefit to the lower courts across the country that have operated under a different understanding for this Court to say so. That's why we took cert in this case, after all. I'm perfectly comfortable to the Court to write that opinion, Your Honor, but the last line of it has got to be that the judgment is affirmed. Well, no one – Because this Court refutes judgments – this Court – How about – how about – how about vacate and remand to decide under State law what the rule in this – who cares about the refund in this case? All right? I know you guys care terribly about it. I know your colleagues on the other side care terribly about it. But the Supreme Court of the United States is here to resolve circuit splits on questions of law. We took this to decide the Bob Richards rule, whether it's a thing. And both sides seem to agree that it is not a thing, as understood by so many courts of appeals across the country. Why shouldn't we put a period at the end of saying, most sides agree, this is not a thing, go back and do it properly? Because the Court reviews judgments and not opinions, Your Honor, and there's no error in the judgment. We vacate and remand for reconsideration under different – the new test all the time, don't we? Not where the – We do that all the time. Yes, but not where the judgment has no error in it. And you know that the judgment has no error in it, because as Justice Kagan explained, the operative part of the opinion, pages 18a to 27a, that's the portion of the Tenth Circuit's opinion where it gives the rule that supports its judgment, and it doesn't say one word about Federal common law or Bob Richards or anything. But it'll be easy – it'll be easy enough for the Tenth Circuit to say that on remand, to follow up on Justice Gorsuch's question, if Bob Richards did not put a thumb on the scale in its analysis. So you will end up getting the result you want from the Tenth Circuit if they truly did what you think they did. Well, I think, Your Honor – But we don't know, because they start out with this whole Bob Richards framework, and I don't think you can be sure. And what's the problem with doing, as Justice Gorsuch said, vacating, remanding, and they can do it without Bob Richards? I think you do know, Your Honor, and I think it would be – Well, if we do know, it'll be simple then, won't it? It would be strange for the Court, I think, to vacate a decision and remand so that the Tenth Circuit can simply reinstate pages 18a to 27a of its opinion. Well, they may or may not do that, though, knowing that Bob Richards does not, contrary to what they said in their opinion, provide the framework for the analysis. You have to understand, Your Honor, what the Court meant by the framework of the analysis. The framework includes the qualification that it applies only where the parties don't have a contract. Remember the judgment that the Tenth Circuit was reviewing, the district court's judgment. The district court had said, this is on page 49a to 50a of the petition appendix. The Court says, thankfully, I don't have to wade into this messiness about the Bob Richards rule. Because these parties have a contract, the contract is ambiguous, and the contract itself supplies the way of resolving that ambiguity. Kagan, may I ask you a question about another aspect of your answer to Justice Gorsuch? I think you said that the Bob Richards rule is wrong in the sense that it puts a thumb on the scales when interpreting a contract, correct? A court should not apply a Federal common law rule to put a thumb on the scale on the contract. Yeah. How about if there is no contract at all? Do you think that there is a Federal rule that decides the question then? Again, I think that question is not presented by this case, but I don't know. Generally not. State law determines the rights and ownership of property. But the Tenth Circuit said that. So in fact, the Bob Richards rule, whether it's a matter of contract interpretation or whether it's a default rule where no contract exists, as to both aspects of the Bob Richards rule, you're saying there's no place for such a rule in our law. Well, there's not a place for a rule of Federal common law. But importantly, I think the Court should also recognize that Bob Richards then went on, in an important part of its opinion, to say, don't make any – don't have any misunderstanding about how the IRS tax regulations work in this case. And the suggestion that this is a new argument that we've sort of sprung on the Court for the first time is completely incorrect. We cited Bob Richards for this proposition on page 13 of our brief to the Tenth Circuit. But the point here is the only reason why we're even entertaining the idea that UWBI would be the equitable owner of a tax refund that the group has allocated to the bank and that the bank earned is because the IRS regulations, for reasons of the IRS's own convenience, pay that refund to the parent. But what the regulations very much want to make clear, and what I hope this Court will use this case as an opportunity to make clear in its opinion, is that when the IRS makes that tax payment to the parent, it does not confer any equitable title. And the reason you know that's true is because the regulations use the term agent, which has a well-established common law meaning, and thereby draw on the general common law of agency. And I don't even take my friend's point of view to dispute that. Go ahead. I guess I'm a little bit confused by this, because that suggests that there is a Federal rule that comes from the IRS regs that allocates this money in the absence of an agreement. I think if you would ask Mr. Reich, Mr. Reich would say, no, that's State law that does that. So that does seem as though you're essentially saying that in the absence of a contract, Federal law controls. Your Honor, the regulations rebut the suggestion that corporate parents like UWBI have made all the time that they ought to be viewed as the owner of a tax refund like this, because they're in possession of it. And you can see this argument all over the blue brief. Petitioner repeatedly says, we are the party who is in possession of the refund. That ought to count when you're figuring this out. The IRS regulations say, no, no, we do not mean to confer any equitable title. We are, for reasons of purely our own convenience, giving you this refund. And so what I think it means is that you can't put a thumb on the scale the other way in favor of corporate parents, which is what some corporate parents have repeatedly tried to ask for by citing the IRS regulations. Bob Richards correctly interpreted the regulations not to do that. And so Federal law can't do that. Breyer. I just don't want you to stop. I like where you're going. It's interesting and helpful. But I have two related questions. You are assuming throughout that Colorado law does give the money to the bank. Okay. On pages 16 and 17 of their reply brief, they say, no, Colorado law does not, because Colorado law requires control by, of the agent, by the principal. And that hasn't happened here. Okay? So just writing the word affirmed is going to overlook what seems like a significant dispute. And the other thing that is bothering me, and I'll mention it once, is I tend to think words like Federal common law are labels which have an uncertain meaning in some instances. And I guess if I had a cousin who was running the IRS, that cousin might think a very good tax principle is when the IRS owes an entity money, you should pay it to the entity. And if, for example, the postman got a hold of the check and then went bankrupt, I don't think you'd say, if you were running the IRS, but there may be no state law to the contrary, the postman's bubblegum creditor gets some of that $4 million. All right, so I'm worried about the term. I'm worried about the implications of what we write. But maybe there is an argument about Colorado law here, although you're certain there isn't, they're certain there is. And so what do we do? Your Honor, let me address all the questions in one answer. Petitioner has not identified a single case under Colorado law in which parties said, we want the nature of our relationship to be an agency. And then a court came back in and said, oh, no, you have not created an agency because you haven't provided the specific forms of interim control that that agency relationship requires. It's supposed to be easy to create an agency relationship. Think about an example where my co-workers appoint me as their agent to go to the deli and pick up lunch. They say, Michael, you will be our agent, the order at the deli will be placed in your name, bring us back the sandwiches, and bring us back the change, too. When I'm on my way back to the office, if I suddenly declare bankruptcy, everyone understands that the sandwiches and the change are the property of my co-workers. They don't become part of my bankruptcy estate. And it doesn't matter that my colleagues didn't specify, here's the specific route you have to take from the deli back to the office. And it doesn't matter that they didn't specifically say that I was required to keep each of my six colleagues change in a separate envelope. In fact, the restatement at Section 8.12, the comment C, and the third restatement is clear, that parties are free to waive the normal segregation obligation. If they don't particularly care about it. And you can understand why closely affiliated parties like these would have wanted to say, you know, for 10 days, which is the only interim period that we're talking about, we're just not that especially concerned about what UWBI does. Alito But what you're talking about, you're talking about general agency law, which is to say you are talking about State law. Fisher Absolutely, Your Honor. That's right. And that's — that's — but it's also — Alito You want us to make a decision of State law. Fisher We wanted — we want you to — the judgment rests on the contract. We think that judgment is absolutely correct. There's no error in it, and that judgment should be affirmed. And another reason that you know that this judgment is correct is that when this particular group, which contains an insured depository institution, sat down to write their contract, their Federal regulator had told them that pursuant to the Federal Reserve Act, they would not be permitted to engage in a contract like the one that Petitioner advocates. Alito One of the things I took from what you said a few minutes ago, but maybe this isn't what you meant, was that you want Federal law to be involved in this to the extent of not having the actions taken by the IRS in mailing the check figure at all in the determination of ownership under State law. You want the Federal government's participation to be completely neutral. Did I misinterpret that? Fisher That's basically correct, Your Honor. I just — I would phrase it slightly differently. The Federal regulations bar a corporate parent like UWI — UWBI from claiming any equitable entitlement to this refund by virtue of the mere fact that it has possession. It has the possession as an agent.  Do we know, by the way, on this, this question in my mind, it may have an obvious answer, but how do we know there is a Bob Richards rule? Now, how do we know it isn't like phlogiston? How do we know it really exists? Because it could be, every time a court has mentioned Bob Richards' rule, what they are doing is going to exactly where they would go if they simply looked to State law, unless, of course, it's in the contract. Now, do we know there is a problem? I mean, which is the case that would be most obvious that a court invoked the Bob Richards rule but went to a result that was different than what you'd reach if you just read the contract under State law? Your Honor, I think generally speaking, there aren't very many of them. And that's why when these contracts, when parties — One. I'm not sure that there is one. I think — in fairness, I think the question would be better directed to my friend. But I think that what these courts — the courts that have looked at these things have said where there's a contract, we should generally speaking apply — in fact, always we're going to apply the contract. Every court of appeals recognizes that where the parties have a contract, you apply the contract. And then the question is — and this is the important part. And again, I think this goes to one of your other — Your Honor's other questions. I really hope that the Court's opinion will make clear in this case that when parties set out to determine equitable ownership of a tax refund, using words like agent and mere intermediary in your contract is a perfectly sensible way — indeed, I think it's the best way — to make clear that the party who holds bare title, who collects the refund from the IRS, does not acquire equitable ownership of it. Petitioner has no sensible explanation for what that language is doing in this contract. It's not to make clear — In your answer to Justice Alito where you said it should be affirmed, should it be affirmed on the basis of the IRS reg or affirmed on the basis of State law? It should be affirmed on the basis of the contract, Your Honor. The judgment — Contract is interpreted — Under State law. With the caveat that — Does the IRS reg play any role, therefore? It plays a role in this very limited sense. Let me ask you this way. If the IRS reg leads you to a different answer, as you described it, than State law does, what happens? It would not. That would not — the IRS reg does not override State law. That's not how it works. But when you said — you said in your brief, Federal law provides relevant background for construing the contract. What did you mean? We mean that a petitioner — a party-like petitioner, UWBI, cannot come into court and say, we have a good claim to being the equitable owner for this refund because we're in possession. After all, the IRS regulations, they paid us. That's how you know we're the owner of it. The IRS regulations do not allow a corporate parent to make that type of argument. And that's what we're — so they do play a role. They don't override State law. Maybe State law would say if you are in possession, then you are the owner. Well, State law certainly does not say that, Your Honor. I mean, it's emphatically the case that the restatement does not say that mere possession coupled with something like, you know, the absence of specific description of interim control leads to equitable ownership. Indeed, as I said, it's supposed to be easy to create — Well, then it just seems as though it's a matter of State law. What does — what does Federal law have to do with it? It is ultimately, at the end of the day, a matter of State law. And more specifically here, it's a part — it's a matter of State contract law. And on that question of State law, Justice Breyer was pointing out that there's disagreement about — on page 16 and 17 — about what the State law is. And the Bankruptcy Court had a different view, correct? That's right. It had a different view — an incorrect view. It had a different view on State law. Yes. So if it is purely a question of State law and there's been disagreement here and there's disagreement between the Bankruptcy Court, which is expert in these matters, and the District Court and the Tenth Circuit, shouldn't we remand for the State law question to be sorted out? You've implied, just to follow up on this, you've implied that the State law question is so obvious, but we have the Bankruptcy Court going the other way on it. Well, it's particular — it's overwhelmingly obvious here because these parties that have a contract that resolves any ambiguity in favor of the Bank. So to whatever extent there is a fight about what you would do where there's not a contract or if the contract — you know, in a different case, if the contract were ambiguous, again, I think you can just read the restatement and understand that it's supposed to be easy for parties to create an agency relationship, but to whatever extent you have doubts about, you know, what these parties wanted for their contract, you know that they wanted an agency relationship because they went out of their way to write an ambiguity-resolving provision in favor of the Bank. And they did that, again, because their Federal regulator had told them to do that. And this is important to the FDIC. It would be very troubling if the Court made a rule that said, you know, it's actually really quite difficult for parties to create an agency relationship to specify that the party that generated the refund has equitable title to it. You have to engage in this onerous analysis, and you have to write down a lot of provisions about control. Would it be a problem for the FDIC if we just said it's a matter of State law? Well, Your Honor, I would — I think the Court should make clear that parties are entitled to rely on the statement that their Federal regulator has given them about how they're supposed to handle contracts exactly like this one, and what the Federal banking regulators have instructed, is write your contract to make clear that you are entering an agency relationship. And, again, parties who have made these contracts have relied on that instruction. So if this Court goes back and says, you know, it's all just a question of State law, I don't think that that gives adequate weight to what the regulators are instructing insured depository institutions to do. But I thought you just said to Justice Kagan it is a matter of State law. It's a matter of — it is. It is in the sense that at the end of the day, you know, these parties have to write a contract. What I am saying is that the Federal regulators in this area have told groups that have insured depository institutions that they should enter an agency relationship. They're required to by Section 23A and 23B of the Federal Reserve Act. Those are the affiliate transaction rules. And it would be — I think — so the Court should say that it is easy for parties to enter that type of agency relationship, and in particular, it suffices to say in this group, for our purposes, what we want to do is have UWBI collect a tax refund as our agent. Remember that the parties said that when the bank incurs a loss, it is entitled to receive a refund equal to what it would have received if it had filed as a separate taxpayer. If the bank had been a separate taxpayer, it would have been the owner of this tax refund, not merely an unsecured creditor. And again, there's just no reason, there's no one who benefits from the arrangement that Petitioner suggests, this debtor-creditor relationship, in addition to the fact that it would very likely violate Federal law. Think about the parties when they're designing this agreement. They know that the bank is the taxpayer that generated it. They know that they want the refund to go within 10 days to the bank. Who benefits from structuring the relationship as a debtor-creditor relationship for those 10 days? The only conceivable entity is the parent company's creditors in a hypothetical future bankruptcy. And there's no way that this group was seeking to protect them, and thereby endangered the bank's refund. So at the end of the day, it is a question of State law, we agree, but we think that the judgment that is under review in this Court rested entirely on State law. The operative part of the opinion is, again, pages 18a to 27a. The entirety of that section has nothing to do with Federal common law or Federal law at all. And that's, again, because the judgment that the Tenth Circuit was reviewing was the one from the district court, which itself had focused on resolving the case based on the parties' agreement. So I hope that, again, the Court will use the case as an opportunity to make clear that the tax regulations don't give a corporate parent any claim to equitable title, first, and, second, that parties are free to allocate questions of tax refunds in this case, and they can do it with words like agent. Sotomayor, but you seem to be saying, I'm not quite sure what you're arguing, because you seem to be saying the opposite. You're saying the IRS payment should be seen as an agency payment only. That goes back to Justice Kagan's point, which is you're not taking a position either way. The IRS regulations do not override State law, Your Honor. They bar a corporate parent like a state law agency. But they don't create a State law agency relationship. Well, they don't. I think they don't. That's right. But what they do do is they bar a corporate parent like UWBI from attempting to invoke its possession as a basis for its equitable ownership. They can't make that argument. Sotomayor, I'm sorry, counsel, it makes no sense. Possession is nine-tenths of the law. I was taught as a child, even before I was a lawyer, so possession has some State law consequences. Whether you want to bar them or not, you can't do that unless you explicitly state that. Your Honor, they do explicitly state it, and the way that they do it is they use the general common law term like agent. And that is exactly the term that you would use to make clear that when UWBI collects a tax refund from the IRS, it doesn't acquire equitable title to it. And you can understand why the parties to this group, and the parties to a lot of groups that have these consolidated filing agreements, said, you know, we want to make clear that when UWBI goes to the IRS and it just receives the refund for reasons of the IRS's own convenience, that mere fact, that mere possession does not, in this case, give UWBI any claim to equitable title. And the way that the regulations do that is by saying, agent, we in this group know that our Federal banking regulators have instructed us to describe our relationship as agency in order to fulfill our legal obligations, and for all those reasons, we are going to say that UWBI in this group is an agent, it's a mere intermediary. Again, if you wanted to design the debtor-creditor relationship that Petitioner suggests, and you went to a lawyer and said, draw that up for me, I think what that lawyer would say is, the one thing you should not say in your agreement is that the corporate parent is going to be the agent or the mere intermediary of the bank. That makes no sense. Kagan. May I ask, Mr. Euston, or maybe this isn't a question, maybe this is more in the realm of making a comment, and this is not on you, Mr. Euston. You have lots of bosses in the Solicitor General's office, but if you had said to the court that you did not intend to defend Bob Richards, as everybody understands that role, and if you had said to the court that you did not intend to state a position on the only question presented in the case, I don't exactly know what we would have agreed on, but I would tell you that there's a pretty good probability that we would have thought that that was an appropriate place to appoint an amicus. So I guess I — to the extent that this is a question, I want to know how you think we should deal with this issue. Euston. Your Honor, I think we told the court in our brief in opposition that, contrary to Petitioner's representation, the Bob Richards rule actually wasn't doing the work in this case that Petitioner would like it to. There is some disagreement about what the Bob Richards rule does, but everybody agrees that that only happens in a case where the parties don't have a contract, and we said this on page 16 of our brief in opposition. Ginsburg. You did say in your brief, and this is in pages 31 and 32, Bob Richards supports the distinct proposition that the parent's role in interacting with the IRS on behalf of the affiliated group does not give the parent temporary equitable title to the refund. So you're bringing up Bob Richards as in support of your position that there's — that the temporary possession doesn't create any equitable title. That's correct, Your Honor, but that aspect of Bob Richards is an interpretation of the Federal tax regulations. It's not a rule of Federal common law, and it's a correct interpretation of the Federal tax regulations. Justice Kagan, just to return to my answer to your question, again, I think on page 16 of our brief in opposition we made clear the very limited work that we think Bob Richards does in the lower courts and in this case. And we said that where the parties have a contract, you resolve ownership under the contract. And that is our core submission here. So I think, again, it's important to understand the — what the regulations do and do not do, and the fact that the regulations prevent Petitioner from making some of the arguments it's tried to make in this case. But at the end of the day, it would be very, very difficult, I think, for this Court to look at this contract and say that where the parties wrote an ambiguity-resolving provision in favor of the bank, where they specified that UWBI should be a mere intermediary, the parties nevertheless unambiguously intended to make UWBI the equitable owner of this refund. Petitioner agrees that he cannot prevail in this case unless he is unambiguously correct. And the reason for that is not because of a rule of Federal common law. It's because that's the clause that the parties wrote into their agreement. That was the basis of the judgment below. There's no error in that judgment. And so that's why at the end of the day this Court should affirm. I also think, as I stated, that I hope the Court will clarify what the regulations do and make clear that it's easy for parties to specify that a party like the bank who earned the refund is the owner of it. A perfectly sensible way to do that is to say we want to make UWBI the agent. We want to make them a mere intermediary. Thank you. Roberts. Thank you, counsel. Five minutes, Mr. Reich. I think I'll start by what my friend conceded at the podium, which is that on the sole question on which this Court granted certiorari, is the Bob Richards rule valid, the answer is no, that that rule is not a valid rule of Federal common law and that courts should not apply it. Therefore, the Tenth Circuit erred in saying that Bob Richards clearly applies this case and sets forth the framework that must govern the party's dispute. And, Justice Kavanaugh, you're exactly right. This is a — the lower courts need clarity on this question. It's the subject of a significant circuit split of great economic significance every day. My friend argued that this decision didn't play a role — that Bob Richards didn't play a role in the decision below, despite what it said, because everyone ostensibly agrees that where there's an agreement, Bob Richards has no effect. That's not the FDIC's position in the lower courts, and that's not what the Tenth Circuit said. Indeed, in its brief in opposition in this case, on page 16, it said that Bob Richards governs unless an agreement clearly addresses the ownership of tax liability and departs from that rule. And in its brief in the Amfin case, which we cite in our cert reply, the government's position, which has been consistent for decades, is that an agreement must contain specific language that conclusively disavows the Bob Richards rule in order to depart from this presumption. So it's not a rule that vanishes whenever there's an agreement. It's a rule that all the lower courts understand as a clear statement rule which puts a very heavy Federal thumb on the scale in favor of a particular allocation of liability, and that's the role it played in the decision below. My friend says that the sole role that the regulations ostensibly play in this area is clarifying that a party can't claim a Federal law entitlement to a refund just because it's been paid to them. That is a response to a straw man. That's nobody's argument. Our argument is State's law governs without any Federal law preference one way or the other. Alito I want to interrupt your rebuttal, but I didn't quite understand his point to be that. I thought his point was that the fact that the IRS for convenience purposes chooses to pay it to the parent is not, cannot be taken as a factor under State law. Do you disagree with that? We do disagree with that, and we don't think that the regulations say anything to that effect. The regulations say the refund is paid directly to and in the name of the parent, and at that point the government's liability is discharged. The regulations express no interest or concern with how State law allocates the refund after that. I will note in their brief they make this point many times that parties can't claim a Federal law entitlement by virtue of that. But the critical point is that under Do you think that the Federal government could not make that, could not take that position? I think it's entirely within the Federal government's power to at least dictate a default rule. And if the IRS enacted a regulation to that effect, we would not argue that's outside of its power. And indeed, to some extent, they have done so in cases where they've said that refunds should be directed to subsidiaries in Section 1660402-7 and 78 of the IRS regulations. But they I apologize for interrupting your rebuttal as well, but just to follow up on Justice Alito's question, do we even need to resolve this? I mean, we took this case to decide the Bob Richards rule. Now we're being asked to address the subsidiary question about the effect of an IRS regulation or the non-effect of it. Do we need to do that? No, Your Honor. And I think my friend's suggestion that this argument was raised on page 13 of the Tenth Circuit brief is just not correct. That page of that brief just quotes the ordinary Bob Richards rule without any suggestion of this new argument about what the regulations mean. And my friend also made this argument that it would seem absurd under State law to not allow the term agent to do all the work of establishing an agency relationship. This is black-letter common law represented in the third restatement, the second restatement. Its illustration, too, in the entire second restatement is making the point that calling something an agency does not establish an agency relationship. And Colorado Supreme Court has said many times that words are not enough in the City of Aurora case and in the Moses case. And this doesn't mean it's hard in any way to assign a refund to the subsidiary. The easiest way to do so is in the government's, in the banking regulator's guidance, their 2014 addendum to their policy statement, which is cited on page 9 of the government's brief, it provides model language that parties can use to achieve the result it's advocating here, which establishes a trust relationship, which is very easy to establish under State law, requires nothing more than designating someone a trustee and requiring funds to be held, to be clearly set aside for the subsidiary. And we think that model language is perfectly sufficient to achieve this result. An agency relationship is harder to create. It requires interim control, and that's been the law in almost every state and in Colorado for a long time. I'd like to end. Maybe I don't hate interrupting as much, but it seems I don't know exactly what you're seeking. If I say you're my agent, you get this money, pay it over to me in 10 days, do I have to tell them how to pay it over to me? Do I have to tell them that I have the ability to redirect payment to someone else? I have to do all those things under Colorado law? May I finish? Briefly. To establish an agency under the common law, the subsidiary would at least need to reserve the rights to direct how the subsidiary fills out, how the parent fills out, fulfills that task, either by having authority to direct it to seek the refund  Thank you, counsel. The case is submitted.